UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-23948-CIV-ROSENBAUM/SELTZER

ALEXANDRA H.,

    Plaintiff,

vs.

OXFORD HEALTH INSURANCE, INC.,
*et al.*,

    Defendants.
_____/

## ORDER ON MOTION FOR RECONSIDERATION; ORDER TO SHOW CAUSE

This matter is before the Court upon Defendant Oxford's Motion for Reconsideration on Motion to Strike or Certify a Question to the Court of Appeals for Interlocutory Appeal [D.E. 112]. Defendant asks this Court to reconsider its Order [D.E. 111] striking Plaintiff's external appeal of Defendant's benefits denial, conducted under New York state law, from the administrative record of her current action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). For the reasons set forth below, the Court grants Defendant's Motion and modifies its previous order as detailed herein. Because the external reviewer's decision is presumably dispositive of the claim, Plaintiff has three weeks to show cause why judgment should not be granted in favor of Defendant.

## I. BACKGROUND

Plaintiff brings this case under ERISA, 29 U.S.C. § 1132(a)(1)(B), to contest Defendant's denial of certain benefits to Plaintiff under an employee benefit plan. D.E. 1. Plaintiff alleges in her

Complaint that Defendant denied her coverage for a partial-hospitalization program to treat an eating disorder on the grounds that the treatment was not medically necessary. *Id.* ¶¶ 10-11. The Complaint further claims that Plaintiff pursued two internal appeals and one external appeal and that after each appeal, Defendant upheld its denial of benefits. *Id.* ¶¶ 12-14.

On August 17, 2012, Plaintiff filed a three-part Motion to exclude from the record on review before this Court any information concerning Plaintiff's unsuccessful appeal of Defendant's benefits decision under the external-appeal program devised by New York state law. D.E. 83; *see* N.Y. Ins. Law § 4910, *et seq.* (McKinney 2012). In support of her motion, Plaintiff asserted that the external appeal was not a part of the administrative record before Defendant when Defendant made *its* adverse benefits determination. D.E. 83 at 3-4. Defendant countered that because New York law and the benefits plan that incorporates it make the external appeal "binding" on the parties, Defendant was required to "affirm" the result of the external appeal, and, thus, the external-appeal proceedings constitute part of the administrative record of Defendant's benefits determination. D.E. 97 at 9-12.

The Court disagreed with Defendant's arguments and found that the New York process operates alongside, rather than supplementing or supplanting the remedies provided by ERISA. D.E. 111 at 5. The Court then embraced the parties' agreement that an arbitrary-and-capricious review applied in this case and, extrapolating from there, found that since that standard contemplates the review of a discretionary decision by the plan administrator—and because the New York decision was binding and not discretionary—the Court had nothing to review. Because ERISA provides for judicial review of an administrator's decision, the Court concluded that it must confine its review to the administrative record compiled prior to the external appeal. The Court expressly declined to

consider whether the New York statute was preempted, although it noted that similar statutes had been upheld as not preempted. *Id.* at 4 n.3.

Defendant filed its Motion for Reconsideration on December 5, 2012. D.E. 112. Defendant contends that this Court's decision to exclude the external appeal is erroneous based on the holding in *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002). According to Defendant, the Court's order excluding the external appeal from the administrative record, while not expressly finding the New York process preempted, has the practical effect of doing so in contravention of *Rush*. The Court held a hearing on the reconsideration motion, D.E 122, and subsequently required further briefing from the parties on the preemption issue, D.E. 124. The Court has carefully considered the parties' positions and the applicable case law and is otherwise fully advised in this matter.

## II. DISCUSSION

### A. Standard for Reconsideration

"[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002) (citing *Mannings v. Sch. Bd. of Hillsborough Cnty.*, 149 F.R.D. 235, 235 (M.D. Fla. 1993)). "The 'purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* at 1369 (quoting *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)). Only three major grounds generally justify reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Id.* (citing *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.*, 62 F. Supp. 2d 1316, 1331 (M.D. Fla. 1999); *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994)). Defendant maintains that the Court's prior

Order was clearly erroneous.

### B. ERISA Preemption

Although the Court previously abstained from considering the question of whether the New York law was preempted by ERISA, to fully address Defendant's reconsideration motion, the Court must decide whether ERISA preempts New York's external appeals process before it can determine whether the record generated in that process can be included in a lawsuit for benefits under ERISA. Put another way, if ERISA preempts the New York process, presumably, the record of any state appeal proceeding should be excluded from the administrative record in this case because it was improper under ERISA. There are two mechanisms under which a state law may be preempted by ERISA: complete preemption and conflict preemption.[1] *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343-44 (11th Cir. 2009).

### 1. Conflict Preemption

To preserve "a uniform body of benefits law," Congress provided that ERISA shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a); *see N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)). On the other hand, ERISA also "saves" from preemption any state law that "regulates insurance." 29 U.S.C. § 1144(b)(2)(A). As the Supreme Court has described, ERISA's

---

[1] Plaintiff's preemption brief (and some other courts) has labeled the two types of ERISA preemption as "express" and "conflict." *See* D.E. 126 at 4. However, what Plaintiff describes as "express preemption" is what the Eleventh Circuit describes as "conflict" preemption, and what Plaintiff describes as "conflict preemption" is what is referred to in this Circuit as "complete preemption." *See Conn. State Dental Ass'n*, 591 F.3d at 1343-44. The Court will adhere to the terms as used by the Eleventh Circuit in the *Connecticut State Dental Ass'n* decision.

preemption clauses are not a "model of legislative drafting." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985). To determine whether a state law "regulates insurance" and, thus, is "saved" from ERISA preemption, a court must ascertain whether a state law is "specifically directed toward entities engaged in insurance" and whether the law "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Ky. Ass'n of Health Plans v. Miller*, 538 U.S. 329, 341-42 (2003).

It goes without saying that New York's external appeals law "relates to" employee benefit plans such as the one at issue in this case, and the parties do not seriously challenge that New York's law is saved from conflict preemption because it relates to insurance. The New York law is specifically directed at entities engaged in insurance because it regulates the conditions under which an insurer may engage in the business of insurance. *See* N.Y. Ins. Law § 4910(a) ("There is hereby established an *insured's* right . . .") (emphasis added); id. § 4914(b)(4)(A)(iv) ("[B]e binding on the plan . . . ."); *see also Miller*, 538 U.S. at 338. Similarly, the New York law, just like the law at stake in *Rush*, "alters the scope of permissible bargains between insurers and insureds" by changing the terms under which an insurer may provide or deny benefits. *Miller*, 538 U.S. at 338-39. Accordingly, the New York external appeals law is not conflict preempted because it is saved by ERISA's "savings" clause as a law that regulates insurance.

**2. Complete Preemption**

Complete preemption "is a judicially-recognized exception to the well-pleaded complaint rule" that is often invoked to support removal of claims to federal court. *See Conn. State Dental Ass'n*, 591 F.3d at 1344. In the context of ERISA, courts have recognized that Congress intended for the remedies included in the statute's civil-enforcement scheme to be the exclusive means by

which plan beneficiaries can seek redress for denied benefits. *See, e.g.*, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52-57 (1987). Thus, under ERISA, complete preemption arises from the "'extraordinary' preemptive power" of ERISA's exclusive civil-enforcement provision. *Id.* (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)). Thus, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).[2] The question, therefore, is whether New York's external appeals law provides a *remedy* distinct from that available under ERISA. After a careful review of the *Rush* decision and the applicable statutes, the Court finds—under the factual situation presented in this particular case—that New York's law does not provide an independent remedy and is therefore not preempted.

a. *Rush Prudential HMO, Inc. v. Moran*

In *Rush*, the Supreme Court faced the question of whether an Illinois statute that required Health Maintenance Organizations ("HMOs") to provide their patients with a mechanism for review by an independent physician of disputes concerning the medical necessity of a covered treatment was preempted by ERISA. *Rush*, 536 U.S. at 359. In relevant part, the Illinois statute provided,

> Each Health Maintenance Organization shall provide a mechanism
> for the timely review by a physician holding the same class of license

---

[2] In *Davila*, the Supreme Court set forth a two-part test for determining whether a state-law cause of action is completely preempted by ERISA: If an individual could have brought her claim under ERISA's civil-enforcement provisions and no independent state or federal legal duty is implicated by the defendant's actions, the claim falls within the scope of ERISA and is preempted. *Davila*, 542 U.S. at 210. This test has been applied to a situation where an action brought in state court is removed to federal court. Here, Plaintiff filed her Complaint in federal court, invoking ERISA's civil-enforcement scheme; she is not attempting to vindicate any state right or remedy provided by New York's external-appeal law. *See* D.E. 1 at 4-6.

> as the primary care physician, who is unaffiliated with the Health Maintenance Organization, jointly selected by the patient . . ., primary care physician and the Health Maintenance Organization in the event of a dispute between the primary care physician and the Health Maintenance Organization regarding the medical necessity of a covered service proposed by a primary care physician. In the event that the reviewing physician determines the covered service to be medically necessary, the Health Maintenance Organization shall provide the covered service.

*Id.* at 361 (citing 215 Ill. Comp. Stat. 125/4-10 (2000)).

After concluding that the statute was saved from conflict preemption as a law that regulates insurance, *see id.* at 364-75, the Court turned to whether the Illinois law provided an impermissible alternative remedy to the ERISA enforcement scheme. Rush Prudential argued that the Illinois statute, and especially the binding nature of the independent reviewer's conclusion, amounted to a binding arbitration that supplanted ERISA's exclusive enforcement scheme. *Id.* at 377-78. The Supreme Court disagreed.

In analyzing the statute, the Court found it was "a state regulatory scheme that provides no new cause of action under state law and authorizes no new form of ultimate relief." *Id.* at 379. Significantly, the Court conceded that the binding nature of the independent review "may well settle the fate of a benefit claim under a particular contract" and that the independent reviewer's "determination would presumably replace that of the HMO as to what is 'medically necessary' under this contract." *Id.* at 379-80. The Supreme Court further explained that under the Illinois scheme, a court faced with a subsequent ERISA action would not be able to review the "medical necessity" decision. *Id.* at 380 n.10 ("[T]o the extent § 4-10 may render the independent reviewer the final word on what is necessary, . . . Rush is obligated to provide the service."). Nevertheless, the Court concluded that, although the independent review is dispositive, the statute did not authorize or

enlarge the plaintiff's claim for relief beyond those benefits available in any action brought under ERISA, and, therefore, the statute was not preempted. *Id.* at 380.

In further considering whether the procedure imposed by the Illinois statute was an improper arbitration that would be preempted by ERISA, the Court distinguished the independent review scheme from classic arbitration. The Court noted that, traditionally, arbitration involved the submission of evidence, hearings with argument and cross-examination of witnesses, and powers to subpoena witnesses and administer oaths. *Id.* at 382. The Court reasoned that, while the Illinois statute permitted the independent reviewer to take limited medical evidence, the process was more akin to a "second opinion" than a traditional binding arbitration. *See id.* at 383-84. As the Court pointed out, the reviewer's power was confined to determining medical necessity based on his own professional judgment. *Id.* at 383. Accordingly, the Court found that the Illinois law was nothing more than a mandate for second-opinion practice and not a separate, binding arbitration process that conflicted with ERISA's civil remedies.

b. New York's External Appeal Law

New York has enacted a law governing insured health plans, including ERISA insured plans,[3] that establishes "an insured's right to an external appeal of a final adverse determination by a health plan." N.Y. Ins. Law § 4910(a). In relevant part, the New York law provides,

> (b) An insured . . . shall have the right to request an external appeal when:
>
> (1)(A) the insured has had coverage of the health care service, which

---

[3] The New York law appropriately exempts self-funded ERISA plans from its scope. *See* N.Y. Ins. Law § 4908; *see also FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990). The parties agree that the plan at issue here is an insured ERISA plan that is subject to the non-preempted requirements of New York's insurance regulations.

> would otherwise be a covered benefit under a subscriber contract or governmental health benefit program, denied on appeal, in whole or in part, pursuant to title one of this article on the grounds that such health care service does not meet the health care plan's requirements for ***medical necessity***, appropriateness, health care setting, level of care, or effectiveness of a covered benefit, and
>
> (B) the health care plan has rendered a final adverse determination with respect to such health care service or both the plan and the insured have jointly agreed to waive any internal appeal, or the insured is deemed to have exhausted or is not required to complete any internal appeal . . . .

N.Y. Ins. Law § 4910(b)(1) (emphasis added). New York courts have concluded that this external appeals process is a function of the state. *See Vellios v. Serio*, 764 N.Y.S.2d 568, 569-70 (N.Y. Sup. Ct. 2003) (finding external appeals agents function on behalf of the state).

An insured has four months to initiate an external appeal, which is then randomly assigned by the New York agency to a certified external reviewer. *Id.* § 4914(a), b(1). When reviewing a medical-necessity determination,

> the external appeal agent shall review the utilization review agent's final adverse determination and, in accordance with the provisions of this title, ***shall make a determination as to whether the health care plan acted reasonably and with sound medical judgment and in the best interest of the patient***. When the external appeal agent makes its determination, it shall consider the ***clinical standards of the plan, the information provided concerning the patient, the attending physician's recommendation, applicable and generally accepted practice guidelines developed by the federal government, national or professional medical societies, boards and associations.*** Provided that such determination shall:
>
> (i) be conducted only by one or a greater odd number of ***clinical peer reviewers***,
>
> (ii) be accompanied by a notice of appeal determination which shall include the reasons for the determination; provided, however, that where the final adverse determination is upheld on appeal, the notice shall include the ***clinical rationale***, if any, for such determination,

>> (iii) ***be subject to the terms and conditions generally applicable to benefits under the evidence of coverage under the health care plan***,
>
> (iv) be binding on the plan and the insured, and
>
> (v) be admissible in any court proceeding.

*Id.* § 4914(b)(4)(A) (emphasis added). Although the New York law states that the external review is binding and admissible in any court proceeding, the statute provides no express cause of action.[4] New York courts have also explained that the external appeal is not binding on the parties in the same way that an arbitration award is binding. *See Nenno v. Blue Cross & Blue Shield of W. N.Y.*, 757 N.Y.S.2d 165, 168 (N.Y. App. Div. 2003).

c. Analysis

A close review of the New York statute reveals that it, in the context of this lawsuit, is not materially different[5] from the Illinois statute. Both statutes provide for an independent review of a plan's medical necessity determination. *See* N.Y. Ins. Law § 4910(b)(1)(A). This review is

---

[4] Although no express cause of action exists in the statute, New York courts have held that, since the external-appeal process operates as a function of the state, an adverse external-appeal decision can be challenged in state court through an Article 78 proceeding, just as any state administrative decision can be challenged in the courts. *Vellios v. Serio*, 764 N.Y.S.2d 568, 570 (N.Y. Sup. Ct. 2003); *see also* N.Y. C.P.L.R. § 7801, *et seq.* It is not clear, however, in the handful of New York cases reviewing external-appeal decisions, whether the health plans involved were ERISA plans or not. Whether ERISA would completely preempt any Article 78 proceeding that concerned an ERISA plan need not be answered today as Plaintiff has brought her action under ERISA challenging Defendant's ultimate denial of benefits and has not directly contested the external-appeal decision itself.

[5] This is not to say that the New York statute is identical to the Illinois statute. To be sure, the New York statute is more elaborate, goes beyond review of only medical necessity determination, provides a state-run review process rather than mandating a plan-provided independent review, and expressly permits the insured to submit additional information to the external reviewer for consideration. *See* N.Y. Ins. Law §§ 4910, 4914. At least in the pending matter, however, none of these differences bear on those aspects of the state statute relevant to the Court's conclusions in *Rush*.

conducted by a medical professional who exercises independent judgment based on his or her professional expertise. *See id.* §§ 4900(b)(2); 4914(b)(4)(A)(i). Just as the Illinois statute confined the reviewer's review to the term "medical necessity" of a "covered service," the external reviewer's decision here is "subject to the terms and conditions generally applicable to benefits . . . under the health care plan." *See id* § 4914(b)(4)(A)(iii). An external reviewer's decision in this case is confined to whether Plaintiff's desired treatment is medically necessary and his decision cannot do more than award or deny benefits—essentially the same kind of "second-opinion practice" discussed in *Rush*. Thus, New York's external-appeal law provides no relief beyond that authorized by ERISA's civil-enforcement scheme and is no more a "binding arbitration" than the Illinois statute.

Plaintiff attempts to distinguish the New York statute from the Illinois statute by emphasizing that the Illinois statute provided an additional "internal" appeal, while New York's provides an "external" appeal. D.E. 126 at 8. While it is true that the Illinois statute requires the HMO to provide access to an independent reviewer and the New York law assigns a reviewer through a state-run process, the Court finds no significance in the distinction. The purpose of both statutes is to allow an insured access to an independent review by a medical professional. Whether that independent review is provided internally or externally, or comes after one or more internal appeals, has no bearing on whether the review scheme itself is providing a remedy beyond those contemplated by ERISA. Who provides access to the review and at what point in the process the review is triggered are questions best left to the state and its regulation of insurance contracts. *Cf. Rush*, 536 U.S. at 386 (discussing states' substantive regulation of insurance contracts); *id.* at 387 (finding the Illinois statute "is the stuff of garden variety insurance regulation").

Plaintiff contends that New York's scheme does provide a remedy not contemplated in

-11-

ERISA, though, by permitting an insured to enforce an external-appeal result through the New York Department of Financial Services. D.E. 126 at 9-10. In support of this argument, Plaintiff points to the website of the New York Department of Financial Services, which instructs individuals to call the Department's hotline if a plan is not complying with an external-appeal agent's decision.[6] *Id.* at 9. From this, Plaintiff argues that an insured's appeal is enforced by the Department's "extensive regulatory enforcement power to assess fines against carriers and forbid them from doing business in New York." *Id.* (citing N.Y. Fin. Serv. § 201). Plaintiff's argument is untenable for several reasons. First, nothing Plaintiff points to actually indicates that the Department of Financial Services levies fines on insurers who do not abide by external-appeal decisions. Second, even if such fines were levied, they would likely not be a remedy provided to the beneficiary, but rather would flow to the state, as most fines do. In this respect, then, such fines represent nothing more than the state's regulation of insurance, as is permitted under ERISA's savings clause; they are not a remedy that a beneficiary can obtain.

Next, Plaintiff points to a decision of the Hawaii Supreme Court that struck down as preempted Hawaii's external-appeal law, as applied to ERISA plans, for the proposition of finding New York's statute preempted as well. D.E. 126 at 10-12. The Hawaii statute, among other things, provided that an appointed, three-member panel would conduct hearings to review medical necessity determinations. *Haw. Mgmt. Alliance Ass'n v. Ins. Comm'r*, 100 P.3d 952, 966 (Haw. 2004) (citing Haw. Rev. Stat. § 432E-6). The law required that only one member of the panel be a physician. *Id.* Finally, the statute incorporated Hawaii's Administrative Procedures Act, and, by doing so, expressly

---

[6] N.Y. Dep't of Fin. Servs., External Appeals - Frequently Asked Questions, Instructions, and Applications, http://www.dfs.ny.gov/insurance/extapp/extappqa.htm (last visited Aug. 5, 2013).

provided for judicial review of the panel's decisions. *Id.* The Hawaii court compared the statute to the Illinois law discussed in *Rush*, and found these differences fatally distinguishable. In particular, the Hawaii court focused on the Hawaiian statute's express judicial-review provision.

Plaintiff maintains that the New York law is indistinguishable from the Hawaii law, and, therefore, that it must be preempted. D.E. 126 at 11. But New York's law is significantly different from Hawaii's. New York's external reviewers are all medical professionals, and they are not empowered to conduct hearings; thus New York's law is closer to Illinois' "second-opinion practice" than Hawaii's arbitration-like scheme. Moreover, while the New York statute makes the external-appeal decision admissible in court proceedings, it does not create an alternative judicial cause of action beyond those contemplated in ERISA.[7] Just as in *Rush*, the results of the external review are merely admissible as evidence in, for example, an ERISA action.

Finally, Plaintiff maintains that the New York statute is preempted because it conflicts with the notice requirements set forth in 29 C.F.R. § 2560.503-1, specifically the provision that requires a group health plan to

> [p]rovide for the identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination.

29 C.F.R. § 2560.503-1(h)(3)(iv). Plaintiff argues, apparently, that the provisions are in conflict because the New York process is "blind" and does not routinely disclose the identity of the clinical peer reviewer to the appellant. *See* D.E. 126 at 15. While Plaintiff has not cited any provision of New York's statute or its accompanying regulations that mandates this, the Court assumes Plaintiff

---

[7] See Note 4, *supra*, for a discussion of judicial review of administrative decisions under New York law and its inapplicability to this case.

refers to the regulation that prohibits an external-appeal agent from divulging the names of the clinical peer reviewers assigned to the appeal. N.Y. Comp. Codes R. & Regs. tit. 11, § 410.10(k).

Plaintiff's argument fails for a number of reasons. First, the New York regulation specifically exempts court proceedings from the anonymity requirement, so, as a practical matter, it is questionable whether a conflict truly exists. *See id.* ("Nothing herein is intended to preclude access to such information during court proceedings.").

Furthermore, the ERISA regulations cited by Plaintiff govern those internal appeals *provided by the plan itself.* *See* 29 C.F.R. § 2560.503-1(b) ("Every employee benefit plan shall establish and maintain reasonable procedures governing the . . . appeal of adverse benefit determinations . . . . The claims procedures for a plan will be deemed reasonable only if . . . [they] comply with the requirements of paragraph[] . . . (h) . . . ."). As Plaintiff herself has extensively argued, however, New York's process is an external mechanism provided by the state, not by the plan.

Additionally, the text of the federal regulation itself suggests that it is not applicable here, as it applies to "experts whose advice was obtained on behalf of the plan." 29 C.F.R. § 2560.503-1(h)(3)(iv). Here, Plaintiff opted to pursue the external appeal. Thus, although the reviewer's decision upheld Defendant's determination, the external appeal was not obtained on behalf of Defendant.

Finally, the cases cited by Plaintiff are all distinguishable. While these cases found state-notice laws preempted by ERISA, they each involved state-court lawsuits bringing state actions for violating state laws that the federal courts found imposed conflicting notice requirements *on plan administrators* directly. *See Cicio v. Does*, 321 F.3d 83 (2d Cir. 2003); *Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562 (11th Cir. 1994); *Howard v. Gleason Corp.*, 901 F.2d 1154 (2d Cir. 1990).

Here, New York's regulation applies to the state-run process, not the plan, and it does not involve any state cause of action.

For all of the reasons discussed above, the Court concludes that New York's external appeal law is not preempted by ERISA.

### C. Scope of the Administrative Record and Standard of Review

Having determined that New York's law is not preempted by ERISA, the Court returns to the original question: what role, if any, the external appeal plays in a suit for denied benefits under ERISA. Previously, the Court accepted the parties' agreement that an arbitrary-and-capricious standard applied in this case and so reasoned that the record before the Court must be confined to events occurring before the external appeal, or else the plan administrator's decision could not be discretionary and thus warrant application of the arbitrary-and-capricious standard of review. When the Court reached this conclusion, it conducted the analysis backwards. Therefore, now that the Court recognizes that the external appeal constitutes a part of the record informing Defendant's ultimate denial of benefits in this case, and in view of the reality that the external appeal decision removed the plan administrator's discretion, the Court determines that a *de novo* review must apply.

As the Supreme Court pointed out, ERISA itself does not provide a standard for reviewing benefits denials. *See Rush*, 536 U.S. at 385-86. To fill this gap, the Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The *Rush* decision recognized, however, that state insurance regulations could prohibit insurers from designing plans that granted unfettered discretion to administrators. 536

U.S. at 386.

Similarly, the Court here concludes that the New York statute, in providing an optional, yet binding, process effectively mandates that a plan be designed to remove the administrator's discretion, should the beneficiary choose to pursue an external appeal. Accordingly, as the New York external-appeal process requires a plan to divest its discretion in favor of the external reviewer's decision, a *de novo* standard of review is appropriate here.

But what does the Court review? As the *Rush* court and others have alluded to, and as this Court recognized in its previous Order, a beneficiary such as Plaintiff had the option to challenge a benefits denial at multiple points along the appeals process. *See* D.E. 111 at 5-6; *Rush*, 536 U.S. at 384 ("If a plan should continue to balk at providing a service the reviewer has found medically necessary, the reviewer's determination could carry great weight in a subsequent suit for benefits under § 1132(a), depriving the plan of the judicial deference a fiduciary's medical judgment might have obtained if judicial review of the plan's decision had been immediate." (footnotes omitted)); *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 174 (2d Cir. 2001) (noting that a plaintiff could show that the focus of judicial review should not be on an initial denial but, alternatively, on a final, post-review denial). Here, Plaintiff elected to pursue the external appeal and then challenged the denial of benefits after the external review.

While *Rush* did not address the scope of the administrative record post-independent review in its holding, the Court cannot ignore the language repeated throughout the *Rush* opinion indicating that a binding external reviewer's decision would be dispositive of the medical necessity question. *See* 536 U.S. at 379 (independent review "may well settle the fate of a benefit claim"); *id.* at 380 ("[T]he reviewer's determination would presumably replace that of the HMO as to what is

'medically necessary' under the contract . . . ."); *id.* at 380 n.10 ("The court would have the responsibility . . . to determine whether other aspects of the plan (*beyond the 'medical necessity'* of a particular treatment) . . . ." (emphasis added)); *id.* ("[T]o the extent [the statute] may render the independent reviewer *the final word* on what is necessary, Rush is *obligated* to provide the service." (emphasis added) (citation omitted)). Plaintiff's Complaint challenges only the medical-necessity determination, a question that appears to have been conclusively answered by the external reviewer in this case. Accordingly, to account for the New York law, ERISA, and Plaintiff's decisions, the Court concludes that its review in this case must be confined to whether Defendant complied with the external reviewer's decision.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that Defendant's Motion for Reconsideration [D.E. 112] is **GRANTED** to the extent outlined above. Because the external reviewer's decision is presumably dispositive[8] of this Complaint, Plaintiff shall have until **August 28, 2013**, to show cause in writing why judgment should not be granted in favor of Defendant.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 6th day of August 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record

---

[8] For example, *Rush* alluded to the possibility that an independent "reviewer's judgment could be challenged as inaccurate or biased, just as the decision of a plan fiduciary might be so challenged." 536 U.S. at 380 n.10. Plaintiff has in the past suggested that the external reviewer may have had a conflict of interest and has sought discovery to that effect, although it is unclear if Plaintiff can or wants to press that claim. If Plaintiff intends to pursue a conflict-of-interest argument against the external reviewer's decision, she must do so in her show-cause response.