UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-23948-CIV-ROSENBAUM

ALEXANDRA H.,

    Plaintiff,

vs.

OXFORD HEALTH INSURANCE, INC.,

    Defendant.
_____/

## ORDER

This matter is before the Court upon Plaintiff Alexandra H.'s response to this Court's Order Granting Defendant's Motion for Reconsideration and Order to Show Cause [ECF No. 127]. Previously, the Court granted Defendant Oxford Health Insurance, Inc.'s Motion for Reconsideration, concluding that the determination of the external review of Plaintiff's benefits denial was presumably dispositive of the issues raised in the Complaint, and therefore, the Court's "review in this case must be confined to whether Defendant complied with the external reviewer's decision." ECF No. 127 at 17.  In light of this conclusion, the Court directed Plaintiff to show cause in writing why judgment should not be granted in favor of Defendant.  *Id.*  The Court has considered Plaintiff's response, all supporting and opposing filings, and the record in this case.  For the reasons set forth below, the Court finds that the external appeal upholding Plaintiff's denial of benefits is conclusive as to the issue of medical necessity, but Plaintiff may conduct discovery as to whether the external reviewer had any conflict of interest that may have biased the decision.

## I. Background

Plaintiff brought the instant action pursuant to § 1132(a)(1)(B) of the Employment Retirement Income Security Act ("ERISA"), seeking to contest Defendant's denial of certain benefits to Plaintiff under an employee benefit plan. ECF No. 1. Plaintiff alleges in her Complaint that Defendant denied her coverage for a partial-hospitalization program to treat an eating disorder on the grounds that the treatment was not medically necessary. *Id.* ¶¶ 10-11. Plaintiff pursued two internal appeals, both of which upheld the denial of coverage. *Id.* ¶¶ 12-14.

In addition, Plaintiff pursued an external appeal under section 4910 of New York Insurance Law, a state statute governing insured health plans and establishing "an insured's right to an external appeal of a final adverse determination by a health plan." N.Y. Ins. Law § 4910(a). The statute allows for an independent review of an insured's benefits denial by a randomly assigned certified external reviewer. *Id.* § 4914(a), (b)(1). In reviewing a determination of medical necessity, the statute provides,

> [T]he external appeal agent shall review the utilization review agent's final adverse determination and, in accordance with the provisions of this title, shall make a determination as to whether the health care plan acted reasonably and with sound medical judgment and in the best interest of the patient. When the external appeal agent makes its determination, it shall consider the clinical standards of the plan, the information provided concerning the patient, the attending physician's recommendation, applicable and generally accepted practice guidelines developed by the federal government, national or professional medical societies, boards and associations.

*Id.* § 4914(b)(4)(A). It further states that the external reviewer's determination is "binding on the plan and the insured. "*Id.* § 4914(b)(4)(A)(iv).

In this case, Plaintiff's external appeal was referred to Managing Care Managing Cost, LLC

("MCMC"), for determination. MCMC, in turn, assigned review to a board-certified psychiatrist to determine whether the treatment at issue was "medically necessary" under the health plan. Following review of Plaintiff's medical records and correspondence from Plaintiff's healthcare providers, the external review agent determined that "the patient did not require the structure of a partial hospital setting in order to be effectively and intensively treated. Moreover, resolving the perpetuating factors pertinent to her treatment of the eating disorder could be effectively addressed at a lower level of care." ECF No. 134-4 at 92. Thus, he concluded, further inpatient hospitalization was not medically necessary. *Id.*

The thrust of the present dispute in this matter concerns the effect of the external review on Plaintiff's denial-of-benefits claim. On August 11, 2013, the Court reversed its prior Order striking the external appeal from the administrative record, recognizing that the external appeal constitutes a part of the record informing Defendant's ultimate denial of benefits. ECF No. 127. And because the New York law mandates an insurer's compliance with the external reviewer's decision, which conclusively determined the medical-necessity issue, the Court concluded that its review in this case "must be confined to whether Defendant complied with the external reviewer's decision." *Id.* at 17.

In particular, the Court based this conclusion on the Supreme Court's decision in *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002). There, the Supreme Court analyzed a state statute similar to the one at issue here, which provided for independent review of disputes concerning the medical necessity of a covered treatment. The action stemmed from Rush's denial of Moran's request to have surgery by an unaffiliated specialist on the grounds that the procedure was not medically necessary. Moran sought independent review of this denial under Illinois's HMO Act, which made the reviewer's decision binding on the insurer. When Rush again denied her claim

after the independent review resulted in her favor, Moran brought suit against Rush. The question before the Supreme Court was whether the Illinois statute was preempted by ERISA.

Although the Supreme Court did not explicitly address the scope of review to be afforded to external appeals, in concluding that the state statute was not preempted, it repeatedly implied that a binding external reviewer's decision concerning medical necessity would be dispositive. *See Rush*, 536 U.S. at 379 (independent review "may well settle the fate of a benefit claim"); *id.* at 380 ("[T]he reviewer's determination would presumably replace that of the HMO as to what is 'medically necessary' under the contract . . . ."); *id.* at 380 n.10 ("The court would have the responsibility . . . to determine whether other aspects of the plan (*beyond the 'medical necessity'* of a particular treatment) . . . ." (emphasis added)); *id.* ("[T]o the extent [the statute] may render the independent reviewer *the final word* on what is necessary, Rush is *obligated* to provide the service." (emphasis added) (citation omitted)).

As in *Rush*, Plaintiff's Complaint here challenges only the medical-necessity determination. But a board-certified psychiatrist undertaking an independent review as an external appeal has already determined the issue. As a result, the Court directed Plaintiff to show cause in writing why judgment should not be entered in favor of Defendant. ECF No. 127 at 17. While positing that MCMC's determination might be presumably dispositive of Plaintiff's Complaint, the Court noted that *Rush* alluded to the possibility that an independent "reviewer's judgment could be challenged as inaccurate or biased," 536 U.S. at 380 n. 10, and observed that Plaintiff had previously asserted that the external reviewer may have had a conflict of interest. ECF No. 127 at 17 n.8.

In response to the Court's Order to Show Cause, Plaintiff primarily argues that judgment should not be entered in favor of Defendant because the external reviewer's determination is

"fundamentally inaccurate." Plaintiff also contends that the external reviewer possibly had a conflict of interest and requests an opportunity to obtain discovery on that issue.

## II. Discussion

### A. Inaccuracy of External Reviewer's Judgment

#### 1. Definition of "Medically Necessary"

Plaintiff first asserts that the external reviewer's determination is inaccurate because he relied on a definition of "medically necessary" that is not found in the plan document. Specifically, Plaintiff states that the external reviewer was asked to answer whether the provision of the disputed treatment could "reasonably be expected to be health beneficial for the patient and/or can withholding the treatment, in whole or in part, reasonably be expected to affect the patient's health adversely." ECF No. 130 at 10. In contrast, the health plan defines "medically necessary" as those services or supplies required to treat the insured's illness or injury that are

> 1. Consistent with the symptoms or diagnosis and treatment of [the insured's] condition;
>
> 2. Appropriate with regard to standards of good medical practice;
>
> 3. Not solely for [the insured's] convenience; and
>
> 4. The most appropriate supply or level of service which can safely be provided. For inpatient services, it further means that [the insured's] condition cannot safely be diagnosed or treated on an outpatient basis.

ECF No. 130-1 at 113. Because the reviewer did not refer to the specific plan definition, Plaintiff suggests, his determination was necessarily inaccurate. The Court respectfully disagrees.

Although the question posed to the external reviewer describes "medically necessary" in different terms, the Court finds no significance in this distinction. First, no indication exists—and

Plaintiff does not assert—that the result of the appeal would have been different—that is—that the appeal would have been decided in Plaintiff's favor had the "correct" definition been used.

Second, aside from the fact that the external reviewer explicitly stated that he relied upon the plan documents and coverage language in reaching his conclusion, *see* ECF No. 134-4 at 91, it is evident from the record that the decision was consistent with the plan's definition of "medically necessary." In particular, the external reviewer specifically determined that an inpatient stay was no longer medically necessary because Plaintiff's "clinical condition could be safely and effectively managed at a lower level of care." ECF No. 134-4 at 92. This determination accords with the plan's definition, which expressly provides that inpatient services are deemed medically necessary only where "the condition cannot safely be . . . treated on an outpatient basis." The external reviewer's conclusion that Plaintiff could safely be treated for her condition without further hospitalization plainly conforms to the standard articulated in the plan. As a result, Plaintiff's challenge on this basis fails.

2. Evidence Supporting External Reviewer's Determination

Plaintiff's main argument, however, is that the decision was inaccurate because insufficient evidence supported the reviewer's determination. In support of this position, Plaintiff thoroughly recounts Plaintiff's clinical records, asserting that the evidence significantly undercuts the external reviewer's medical-necessity determination and supports Plaintiff's purported need for further inpatient treatment. While the Court is sympathetic to Plaintiff's illness and sincerely hopes her condition improves, Plaintiff's argument lacks merit in light of this Court's previous Order. Specifically, Plaintiff appears to be requesting that the Court undertake review of the medical-necessity determination, which the Court has already determined to have been conclusively

established by the external appeal. Although Plaintiff purports to challenge the "accuracy" of the reviewer's judgment—a challenge that was impliedly contemplated by *Rush*—Plaintiff appears simply to disagree with the external determination.

As noted in the Court's previous Order, the language in the *Rush* opinion indicates that a binding external reviewer's decision is dispositive as to what is "medically necessary." *Rush*, 536 U.S. at 380. As a result, MCMC's determination that inpatient treatment is not medically necessary is conclusive as to that issue here.

But *Rush* did leave open the possibility for *other* avenues of relief. For example, even where the independent reviewer renders the final word on what is necessary, a court is still responsible for determining "whether *other aspects* of the plan (*beyond the "medical necessity"* of a particular treatment) affect the relative rights of the parties." *Id.* at 380 n.10 (emphasis added). Moreover, a reviewer's judgment "could be challenged as inaccurate or biased." *Id.* In other words, although an external reviewer's medical-necessity determination is definitive, such a result does not prevent an insured from challenging the appeal on grounds independent of that determination.

Here, Plaintiff directly contests the external reviewer's decision as to what is medically necessary. Although the argument is couched in terms of "inaccuracy," Plaintiff in fact seeks a determination from this Court that the appeal was wrongly decided, which is directly at odds with *Rush's* suggestion that the appeal is dispositive as to the medical-necessity dispute. As discussed above, although *Rush* proposed the possibility that an insured could challenge a reviewer's judgment for inaccuracy, such a challenge must necessarily be separate and apart from the medical-necessity determination. Otherwise, the reviewer's determination of what is medically necessary would not actually be dispositive.

Contrary to Plaintiff's suggestion, the term "inaccurate" does not simply mean "wrong" in this context. Rather, in its broadest sense, "inaccuracy" refers to errors and omissions so obvious that they require no second-guessing. For example, the external reviewer's decision would be inaccurate if it purported to rely on medical records belonging to another patient or if he analyzed the medical necessity of a treatment other than the one in dispute—in other words, blatant discrepancies that do not require judgment or scrutiny. No such errors have been cited here.

Moreover, although *Rush* did not elucidate what the term "inaccurate" means as a matter of law, its use of the word in conjunction with "biased" is fairly telling and indicates that, in this context, "inaccuracy" may also relate to an external reviewer's possible conflict of interest. Such an interpretation finds support in a later Supreme Court case, *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), in which the Court analyzed an issue relating to an ERISA plan administrator's conflict of interest. Significantly, the Court repeatedly juxtaposed the two terms, utilizing the term "accurate" as an antonym for "biased." *See* 554 U.S. 105, 114 (2008) ("[C]laims processing . . . falls below par when it seeks a biased result, *rather than* an accurate one.") (emphasis added); *id.* at 118 (A plan administrator's conflict of interest "should prove less important . . . where the administrator has taken active steps to *reduce potential bias* and to *promote accuracy*") (emphasis added). This interpretation of "inaccuracy" is in harmony with *Rush*.

Ultimately, review of Plaintiff's external appeal with respect to what treatment is medically necessary is limited to whether other independent factors may have contributed to an erroneous denial of benefits, not whether the Court agrees or disagrees with the reviewer's conclusions. Because the Court has already held that the external reviewer's determination of medical necessity is dispositive in this case, Plaintiff cannot seek to challenge the decision as incorrect based upon the

sufficiency of the evidence in the record.[1]  For this reason, Plaintiff's inaccuracy argument fails.[2]

## B. Conflict of Interest

As indicated previously, however, Plaintiff's assertion that MCMC may have had a conflict of interest when it rendered its decision is a permissible challenge to the external appeal.  Although Plaintiff raises the argument in her response, she states that discovery on the issue has been halted and requests permission to reinitiate her discovery efforts.  In short, Plaintiff seeks to ascertain whether MCMC had any financial relationship with Defendant, such that MCMC would have had an incentive to provide reports favorable to Defendant.  Plaintiff states that although she has previously sought discovery on the matter, discovery ceased after the Court ordered the external appeal stricken from the record and denied as moot her Motion to Compel Discovery Regarding

---

[1] Although Plaintiff relies on various cases for the proposition that a court may review external review decisions, all of the cases that Plaintiff cites are New York state cases, and none appear to involve ERISA-governed plans.  As a result, the Court does not find them persuasive here.  *See Schultz v. Metro. Life Ins. Co.*, 994 F. Supp. 1419, 1421 (M.D. Fla. 1997) ("Only federal common law ERISA interpretations are binding on this court.") (citing 29 U.S.C. § 1144(a)).

[2] Plaintiff also moves to strike Defendant's Response to Plaintiff's Notice of Supplemental Authority [ECF No. 142].  On January 3, 2014, Plaintiff filed a Notice of Supplemental Authority, directing the Court's attention to a recent order entered by the United States District Court for the District of Oregon in *Yox v. Providence Health Plan*, No. 3:12-cv-01348-HZ.  ECF No. 140.  Defendant filed a response to Plaintiff's Notice, presenting various arguments about why *Yox* is distinguishable from the present case.  ECF No. 141.  Plaintiff now requests that the Court strike Defendant's response on the grounds that it constitutes an unauthorized additional memorandum of law.  ECF No. 142.

Regardless of whether Defendant's response was appropriate, the Court declines to strike it from the record, as the Court does not rely on *Yox* in the present Order.  In short, *Yox* is inapposite here because the court in that case declined to consider the external appeal as part of the administrative record and therefore did not touch upon the effect of the appeal on the plaintiff's ERISA claim—the very issue before the Court here.  As *Yox* does not aid the Court in the present determination, the Court denies as moot Plaintiff's Motion to Strike and the Alternative Motion for Leave to File a Response.

Defendant's Relationship with MCMC [ECF No. 83]. *See* ECF No. 111. In response, Defendant argues that Plaintiff has already obtained conflict-of-interest discovery from both MCMC and Defendant, and the documents produced demonstrate that no financial relationship between the entities exists.

While it is true that Plaintiff obtained discovery from MCMC and Defendant, the Court disagrees that "it is factually indisputable that MCMC had no financial conflict." In support of its position, Defendant points to two documents that it claims conclusively resolve the issue. But the documents upon which Defendant relies are documents pertaining to the external appeal that only generally certify that MCMC had no conflict of interest. *See* ECF No. 134-4 at 68, 88. Moreover, these documents were produced as part of the administrative record and do not shed light on the nature of the relationship, if any existed, between MCMC and Defendant. While the Court expresses no opinion on whether Plaintiff will ultimately succeed on her claim, the Court will not deny her the opportunity to seek information in support of it. Accordingly, the Court grants Plaintiff's request to seek discovery pertaining to her conflict-of-interest claim.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** as follows:

1. Plaintiff shall be permitted to conduct discovery related to her conflict-of-interest claim. This discovery shall be completed by **June 20, 2014.**

2. Plaintiff's Motion to Strike Defendant's Unauthorized Additional Memorandum of Law [ECF No. 142] is **DENIED AS MOOT**.

3. Plaintiff's Alternative Motion for Leave to File a Response Memorandum [ECF No. 142] is **DENIED AS MOOT**.

4.  Defendant's Motion for Hearing [ECF No. 139] is **DENIED AS MOOT**.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 25th day of April 2014.

                                                                          ROBIN S. ROSENBAUM
                                                                       UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record