UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-cv-23948-MORENO/O'SULLIVAN

ALEXANDRA H.

    Plaintiff,

vs.

OXFORD HEALTH INSURANCE INC.,

    Defendant.
_____/

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

As with her Motion for Summary Judgment, Plaintiff's Opposition to Oxford's Motion for Summary Judgment ("Opposition") (DE 265) relies on many misstatements in an effort to persuade this Court that the determination made by Oxford in this case was "wrong" and arbitrary and capricious. Foremost is Plaintiff's suggestion that the application of the *de novo* standard of review is already a settled issue in this case. While that was this Court's prior determination on summary judgment after it found that the binding nature of the external review stripped Oxford of its discretion, the Eleventh Circuit reversed that ruling and remanded the issue of the proper standard of review to this Court for further consideration. Manifestly, this is not a settled issue.

The issues presently before the Court are (1) determine the applicable standard of review, and (2) apply it to the Court's review of the administrative record. Where, as here, the ERISA Plan at issue grants full discretionary authority to Oxford and others to which Oxford has delegated the performance of duties, the applicable standard of review is the arbitrary and capricious standard.

Under that standard, based on the relevant information before Oxford, its decision to deny benefits for further PHP care was *de novo* correct, and at a minimum reasonable, for the reasons previously discussed in Oxford's Motion for Summary Judgment (DE 252) and its Opposition to Plaintiff's Motion for Summary Judgment (DE 268). Under the arbitrary and capricious standard of review, this entitles Oxford, and not Plaintiff, to summary judgment.

## II. ARGUMENT

### A. THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW APPLIES

As in her Opposition, Plaintiff contends that the standard of review in this case is *de novo*, and gives the misimpression that this is a settled point because this Court previously held the *de novo* standard of review applied and the Eleventh Circuit purportedly did not reverse that ruling. (DE 265 at pp. 2-3). Plaintiff goes on to argue that *de novo* review should be applied in this case because, as this Court previously held, the external review removed any deference that might be owed under the Plan. *Id.*

But the Eleventh Circuit expressly reversed this Court's prior ruling on this point, holding that the external review was stripped of its estoppel effect, and left for this Court the determination of the applicable standard of review:

> In the event that *we reverse the district court on the preclusive effect of the medical necessity issue (as we do)*, Oxford asks this Court to greet and decide the merits of the medical necessity issue in this appeal. We decline Oxford's invitation. We also deem it prudent to give the district court, in the first instance, the opportunity to reconsider its view that de novo review applies here, where the external review is stripped of its estoppel effect on the issue of medical necessity.

*Alexandra H. v. Oxford Health Ins., Inc.*, 833 F.3d 1299, 1317, n.10 (11th Cir. 2016) (emphasis added).

Plaintiff now challenges Oxford's position that this Court's prior rationale for stripping Oxford of its discretionary authority (DE 127, p. 16) is no longer applicable. (DE 265 at p. 2).

Plaintiff argues that the external review decision was the final benefit decision in this case, and that Oxford's duty following that review was "solely ministerial." But Plaintiff gets this wrong. In analyzing the impact of the external reviewer's "Medically Necessary" determination, it is important to review the scope of the external review as set forth in the applicable New York statutes. These laws allow for the external reviewer to issue a medical necessity determination, but not a coverage determination. *See* N.Y. Ins. Law §§ 4910, 4914. Because that leaves a coverage determination to Oxford, Oxford's role was not solely ministerial.

Further, despite Plaintiff's reliance on *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 380 (2002), the Supreme Court in *Rush* did not rule on the standard of review to be applied when an external reviewer issues a medical necessity determination. Instead, the Court rejected the HMO's argument that a potential impact on the standard of review resulted in complete preemption of the Illinois external review statute.[1] Post-*Rush*, the Sixth Circuit rejected the exact argument made by Plaintiff here and applied the arbitrary and capricious standard where the insurer made a coverage determination following the external review on medical necessity. *See Solomon v. Med. Mut. of Ohio*, 411 F. App'x 788, 792 (6th Cir. 2011) (unpublished).

Further, this Court should also reject Plaintiff's erroneous argument that *de novo* review is required because discretion was not delegated to UBH. (DE 265 at p. 3). As Oxford has explained, the Plan indicates that medical necessity determinations are made by Oxford "and anyone to whom we legally delegate to perform, on Our behalf, under the Agreement," and specifically delegates the handling of mental health and substance abuse clinical appeals to OptumHealth Behavioral Solutions (d/b/a UBH). (*See* DE 268 at pp. 4-5); *E.R. v. UnitedHealthcare Ins. Co.*, Case No. 3:14-cv-

---

[1] Moreover, in *Rush*, the HMO did not merely rubber stamp the external reviewer's medical necessity determination and instead refused to follow it. While such refusal may have been wrong, it is an example of how the claim fiduciary's decision in approving or denying coverage following an external review is not merely ministerial.

1657, 2017 U.S. Dist. LEXIS 47571 at *30-31 (D. Conn. March 30, 2017) (applying arbitrary and capricious standard of review to determinations made by UBH as UnitedHealthcare's Mental Health/Substance Use Disorder Designee).

As discussed in Defendant's Opposition, based on the discretionary authority afforded under the Plan, this Court's review should be done pursuant to the deferential arbitrary and capricious standard of review. (*See* DE 268 at pp. 3-4)

### B.  THE DENIAL OF FURTHER PHP BENEFITS WAS *DE NOVO* CORRECT AND, AT A MINIMUM, REASONABLE

Many of the arguments Plaintiff makes in opposition to Oxford's motion for summary judgment are the same as those she made in support of her motion for summary judgment (DE 254) and have already been addressed at length by Oxford in its opposition to her motion. (DE 268). These issues are discussed briefly below, followed by a response to the additional points Plaintiff has raised.

#### 1.  *Consideration of Contemporaneous Clinical Information*

Plaintiff again relies on the recommendation of her primary care physician, Dr. Marci Schneider, from 2009 to support the medical necessity of continued PHP care nearly two (2) years later, in January 2011. (DE 265 at p. 7). Plaintiff again mentions instances of suicide attempts from her early twenties and characterizes an apparent attempt six months prior to the admission at issue as "just prior" to the admission (and without noting that Oxford approved inpatient care for that treatment in June 2010). *Id.* And again, Plaintiff cites to treatment notes from December 2010 – when Oxford had approved PHP care – as well as a January 2011 letter from Dr. Oliver-Pyatt, which was virtually identical to a 2009 letter from Dr. Oliver-Pyatt, rather than contemporaneous clinical records. *Id.* at pp. 7-8.

Plaintiff continues to focus on her past condition, arguing that she had previously failed at "outpatient treatment"[2] and therefore required PHP care. (DE 265 at p. 6). However, Plaintiff had also had prior episodes of PHP, residential and inpatient treatment, so Plaintiff's statement regarding her prior failures at various levels of care could arguably be applied to all levels of care – and would be equally irrelevant when considering what level of care was medically necessary in January 2011.

Similarly, as Oxford previously noted, Plaintiff is incorrect when she suggests that the external reviewer misrepresented the level of care being sought as inpatient, as it is clear from a review of his entire report that he was aware PHP care was at issue. (DE 268 at p. 14)

As Oxford explained in its Opposition, its determination to deny further PHP benefits was *de novo* correct when considering the contemporaneous clinical information before Oxford at the time it rendered its final appeal determination, and Plaintiff has not cited any then-current clinical information in the administrative record supporting her argument that she satisfied either the Plan's "Medically Necessary" definition or the Level of Care Guidelines as of January 5, 2011. (DE 268 at pp. 7-12, 15-17)

2.   *Prior Rulings as Law of the Case*

Oxford has also already explained that this Court previously ruled that the external reviewer did not apply the wrong definition of "Medically Necessary," that Oxford made its Level of Care Guidelines available to Plaintiff, and that the external reviewer did not consider the wrong medical condition. (DE 268 at pp. 6-7, 12-14). The Court should therefore reject Plaintiff's attempt to re-

---

[2]   It should be noted that the alternative level of care offered by Oxford upon denying coverage for further PHP care was *intensive* outpatient treatment ("IOP"), which Plaintiff acknowledges as a level between PHP and outpatient treatment. (DE 265 at p. 6) Plaintiff also suggests that meals are not typically monitored at the IOP level of care. *Id.* The Court should ignore this statement because it is not supported by any reference to the record. In fact, the Oliver-Pyatt Center website indicates that meal-monitoring is a component of its own IOP treatment. *See* http://www.oliverpyattcenters.com/intensive-outpatient/ (visited October 3, 2017).

5

argue these issues, (DE 265 at p. 6 n.3 & p. 10), which are law of the case as they were not raised on appeal. *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1301 (11th Cir. 2012).

### 3. Avoiding the Very APA Guideline Plaintiff Previously Relied Upon

In contrast to her Motion for Summary Judgment (DE 254), where Plaintiff relied upon the American Psychiatric Association's *Practice Guideline for the Treatment of Patients with Eating Disorders* ("APA Guideline") for PHP treatment in an attempt to support her argument, Plaintiff completely ignores these guidelines in her Opposition. Instead, she argues that a patient's weight is not a factor under the Policy's "Medically Necessary" definition or the UBH Level of Care Guidelines. (DE 265 at p. 8). But weight is a consideration under the APA Guideline, (as this Court previously noted) and was a factor considered by the external reviewer. APA Guideline (http://psychiatryonline.org/pb/assets/raw/sitewide/practice_guidelines/guidelines/eatingdisorders.pdf) at p. 37; (DE 189 at p. 30).

Similarly, Plaintiff contends that medical stability was not an appropriate reason to deny further PHP care. (DE 265 at p. 9). Again, this factor is part of the APA Guideline criteria. APA Guideline at p. 37. Oxford has previously explained that consideration of a patient's medical stability is part of the analysis as to whether a higher level of care (such as residential treatment) would have been necessary.[3] (DE 268)

Plaintiff goes on to suggest that her "motivation for treatment" was not a valid reason to deny her claim, and instead can only support the approval of continued PHP care. Yet this is another factor under the APA Guideline, which suggests that a patient who has "fair" motivation may need IOP care, whereas a patient who only has "partial" motivation may need PHP care. APA

---

[3] The same is true for a patient's weight, which in this case met the APA Guideline of being greater than 80% (as a percentage of healthy body weight) for either PHP care or IOP care. APA Guideline at p. 37.

6

Guideline at pp. 38-39. Thus, the consideration of Plaintiff's motivation for treatment is appropriate under both UBH's Level of Care Guidelines, as well as the APA Guidelines, in determining that a less intensive level of care was appropriate.

### 4. *Application of the Eleventh Circuit's Six Step Analysis*

Thus, for the reasons set forth in Oxford's Motion for Summary Judgment and its Opposition to Plaintiff's Motion for Summary Judgment, this Court should uphold Oxford's determination as *de novo* correct. However, even if the Court were to find Oxford's decision to have been "wrong" from the perspective of *de novo* review of the administrative record before Oxford, the Court must continue with the remainder of the Eleventh Circuit's six step analysis as set forth in *Doyle* v. *Liberty Life Assur. Co. of Boston*, 542 F.3d 1352, 1358 (11th Cir. 2008) and *Blankenship* v. *Metropolitan Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011). Because Oxford is vested with discretionary authority as discussed above (the second step of the analysis), the Court must determine whether reasonable grounds exist to support Oxford's decision. For the reasons set forth in Oxford's Motion for Summary Judgment (DE 252), Oxford's determination was, at a minimum, reasonable and therefore satisfies the third and fourth steps of the *Doyle* analysis. Finally, Plaintiff has offered no argument to support that a conflict of interest (beyond the structural conflict) should be considered under the fifth and sixth steps of the *Doyle* analysis, providing no basis to disturb Oxford's reasonable determination. (*See* DE 252 at pp. 15-16). Accordingly, Oxford is entitled to summary judgment.

### III. CONCLUSION

For the foregoing reasons and those stated in Oxford's Motion for Summary Judgment, the arbitrary and capricious standard of review applies, Oxford's determination under that standard was

*de novo* correct and at a minimum reasonable, and summary judgment should therefore be entered in favor of Oxford.

Dated: October 5, 2017　　　　　　　　By: /s/ *Jeannine C.Jacobson*
　　　　　　　　　　　　　　　　　　　Jeannine C. Jacobson / FBN 58777
　　　　　　　　　　　　　　　　　　　ROBINSON & COLE LLP
　　　　　　　　　　　　　　　　　　　777 Brickell Avenue, Suite 680
　　　　　　　　　　　　　　　　　　　Miami, FL 33131
　　　　　　　　　　　　　　　　　　　Tel. No. 786-725-4120
　　　　　　　　　　　　　　　　　　　Fax No. 786-725-4121
　　　　　　　　　　　　　　　　　　　Email: jjacobson@rc.com

　　　　　　　　　　　　　　　　　　　Michael H. Bernstein, *pro hac vice*
　　　　　　　　　　　　　　　　　　　Robinson & Cole LLP
　　　　　　　　　　　　　　　　　　　666 Third Avenue, 20th floor
　　　　　　　　　　　　　　　　　　　New York, NY 10017

　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2017, a true and correct copy of the foregoing has been served by electronic filing through the CM/ECF system, which will send notice to the parties to this litigation as follows:

**Alicia Paulino-Grisham, Esq.**
**Maggie M. Smith, Esq.**
DI Law Group
Paulino-Grisham, Smith & Chmielarz, PA
3201 W. Commercial Blvd., Ste. 227
Ft. Lauderdale, FL 33309
Tel:     954-989-9000
Fax:     954-989-9999
Email:  Maggie@dilawgroup.com
            Alicia@dilawgroup.com

**Lisa S. Kantor, Esq.**
Kantor & Kantor, LLP
19839 Nordhoff Street
Northridge, CA 91324
Tel:     818-886-2525
Fax:     818-350-6272
Email:  lkantor@kantorlaw.net

                                                                       /s/   *Jeannine C. Jacobson*
                                                                       Jeannine C. Jacobson